IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2004 Session

## KELLIE COX v. RANDY COX

**Appeal from the Chancery Court for Lawrence County**
**No. 10774-02     Stella L. Hargrove, Judge**

---

### No. M2003-01622-COA-R3-CV

---

After twenty-one years of marriage and raising two children, now adults, Wife filed for divorce. The trial court granted the divorce and ordered Husband to pay rehabilitative alimony for three years, awarded Wife sole possession of the marital residence and ordered Husband to pay the mortgage as alimony *in futuro* until Wife remarries, lives with a person of the opposite sex or dies. Husband was also required to pay Wife's attorney fees. Husband appealed. We modify the trial court's order requiring Husband to pay alimony *in futuro* and reconstitute it as rehabilitative alimony with a three year limit. In all other aspects, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Modified in Part and Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Randy Hillhouse, Lawrenceburg, Tennessee, for the appellant, Randy Cox.

Paul A. Bates, Lawrenceburg, Tennessee, for the appellee, Kellie Cox.

### OPINION

Kellie Cox (Wife) and Randy Cox (Husband) married in 1981. They have two children, both of whom are now adults. In February 2002, Wife filed a Complaint for Legal Separation asserting that Husband was guilty of inappropriate marital conduct and that the parties had irreconcilable differences. A Default Judgment was entered on May 7, 2002 and Wife was granted a legal separation for a period of two years. The court awarded Wife possession of the couple's marital residence and required Husband to pay the accompanying mortgage, homeowner's insurance and real property taxes. Husband was awarded possession of the 1996 Ford Ranger and Wife was given the 1990 Buick Century. Husband was ordered to pay the insurance on both vehicles. Furthermore, Husband was required to assume the indebtedness on numerous credit cards and to pay Wife's medical and dental insurance. The trial court also ordered Husband to pay $1,500 towards Wife's legal expenses and $50 per week to Wife for *pendente lite* support.

Thereafter, Wife amended her Complaint for Legal Separation to an action for an absolute divorce. Husband answered and counterclaimed. He did not contest the divorce, but asserted that Wife was guilty of inappropriate marital conduct and asked that the court equitably divide the parties' marital property pursuant to Tenn. Code Ann. § 36-4-121.

At the time of trial Husband was 43 years old and in good health. He had a ninth grade education, had earned his G.E.D. and was gainfully employed at Murray Ohio Manufacturing Company where he earned $1,338 a month. Wife was 44 years old and also in good health. Like Husband, she had worked factory jobs for most of the marriage; however, at the time of trial, Wife was unemployed and a full-time student. Prior to going back to school, Wife had been employed at Hammond & Associates where she earned $14.81 an hour, but Hammond & Associates closed in April 2001. Wife testified that she and Husband agreed that she should go back to school. She testified, "He told me not to worry about the bills and he'd take care of it." Her sole source of income was temporary unemployment compensation of $190 a week. At the time of trial, she only needed one more semester to earn her associate degree.

The parties had extensive debt due primarily to their irresponsible gambling habits. In 2001, they "coined-in"[1] $252,217.05 and lost $38,152.35 while gambling at Horseshoe Casino. Their principal asset was the marital residence, owned jointly, which was subject to a $19,540 mortgage and had a net value of $30,460.

Husband's debts were discharged on August 6, 2002 after filing Chapter 7 bankruptcy. Though employed and mostly free of debt, Husband was behind on the *pendente lite* payments previously ordered by the trial court.

After a hearing on April 4, 2003, the trial court granted the parties a divorce. Acknowledging that the parties' financial problems were exacerbated by extensive credit card debt and gambling by both spouses, the trial court recognized that their long-term marriage carried a presumption of equal division of marital property and proceeded to divide the marital assets and debts equally.

With the exception of a few items, the court directed the parties to retain the modest personalty currently in his/her possession. Husband was allowed to retain his 401(k), valued at $4,818.81 though encumbered by a loan of $2,321.56 (which loan was obtained in violation of court order) and his pension plan through his employer, Murray Ohio Manufacturing Company. Each party was awarded a one-half interest in the marital residence, deemed to have a fair market value of $50,000; however, possession of the marital residence was awarded to Wife until she remarries, lives in the house with a person of the opposite sex, or dies. Wife was held responsible for

---

[1]The record identifies this is a gambling phrase which identifies the amount of money – coins – a gambler places in the machines during a gambling spree. The parties introduced into evidence a record maintained by the casino, which was keeping tabs on the parties gambling for computation of gaming credits, such as free rooms, dinners, etc. The result of the parties "coining-in" $252,217.05 during the gambling spree was the net loss of $38,152.35.

$14,318.87 of marital debts, primarily credit card debt she incurred after separation as well the indebtedness owed to her mother.

The court found that Wife had "demonstrated a need for alimony and that Husband has the ability to pay." It assigned Husband the past due, current and future mortgage payments on the marital residence as alimony *in futuro*.[2] The court also ordered that Husband pay Wife $100 per week as rehabilitative alimony for the next three years and to secure the obligation with a $100,000 life insurance policy, naming Wife as the beneficiary. In arriving at this conclusion, the court found that Wife had no job, no savings, no retirement and a significant amount of debt. The trial court also found that Wife did not have sufficient liquid assets to pay her attorney fees and ordered Husband to pay $1,500 toward attorney fees as alimony *in solido*.

Husband raises three issues on appeal. First, Husband questions the court's award to Wife of rehabilitative alimony and alimony *in futuro*, contending that Wife is not economically disadvantaged and that it is improper to award both forms of support. Second, he asserts that the trial court's division of marital property was inequitable, particularly the fact that Wife was given possession of the marital residence, and he was ordered to pay the mortgage. He further contends that the division of marital assets is not equitable because the trial court did not assign a value to all of the marital property. Third, he disputes the trial court's award to Wife of attorney fees.

Standard of Review

An appellate court's review of a trial court's findings of fact is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Unless there is an error of law, we must affirm the trial court's decision as long as the evidence does not preponderate against the findings. *Umstot v. Umstot*, 968 S.W.2d 819, 821 (Tenn. Ct. App. 1997). Where the trial court does not make findings of fact, we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). Questions of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

---

[2]While the trial court's Findings of Fact and Conclusions of Law refer to this as alimony *in solido*, the trial court's Judgment identifies these payments as alimony *in futuro*.

<u>Alimony</u>

Husband challenges the trial court's award to Wife of rehabilitative alimony and alimony *in futuro*. Husband asserts that the trial court's award of rehabilitative alimony[3] of $100 per week to Wife for a period of three years was improper, because Wife is not economically disadvantaged. Husband argues that Wife is better educated than he and thus has a higher earning capacity. Furthermore, he also disputes the trial court's award of alimony *in futuro* in the form of mortgage payments on the marital home until the first of three contingencies occurs, asserting that a concurrent award of rehabilitative alimony and alimony *in futuro* is inconsistent.

Tenn. Code Ann. § 36-5-101(a)(1) instructs that a court may award "suitable support and maintenance of either spouse . . . according to the nature of the case and the circumstances of the parties. . . ." When determining whether alimony is appropriate, the court shall consider various factors set forth in Tenn. Code Ann. § 36-5-101(d)(1):

> (A) The relative earning capacity, obligations, needs and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions; and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

---

[3]The judgment does not expressly award rehabilitative alimony. The award of rehabilitative alimony is stated in the Findings of Fact and Conclusions of Law. The judgment incorporated the Findings of Fact and Conclusions of Law by reference with the mandate that "the same are ordered by this Court."

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).[4] Furthermore, while a trial court is to consider all relevant statutory factors to determine if an economically disadvantaged spouse can be rehabilitated, the most important statutory factors are the disadvantaged spouse's need and the other spouse's ability to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).

Our legislature has expressed a preference for rehabilitative alimony. *Burlew*, 40 S.W.3d at 470 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000)). Tenn. Code Ann. § 36-5-101(d)(1) instructs that "It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance." Further, "If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only." *Crabtree*, 16 S.W.3d at 360. In contrast, alimony *in futuro* "is to provide financial support to a spouse who cannot be rehabilitated." *Burlew*, 40 S.W.3d at 471.

Here, the record shows that Husband was gainfully employed, had a 401(k) and a pension and his marital debts had been discharged in bankruptcy. Conversely, Wife was unemployed and a full-time student with significant debt. At the time of trial, Wife was clearly economically disadvantaged compared to Husband; however, she was only forty-four years old, in good health and only one semester short of obtaining a college degree. She exhibited a desire to improve herself and testified that she hoped to remain in school and obtain her B.A. Accordingly, we find she is an appropriate candidate for rehabilitative alimony.

Wife was given exclusive possession of the marital residence, and Husband was ordered to assume sole responsibility for the $19,540 mortgage on the home as alimony *in futuro* until she remarries, lives in the home with a person of the opposite sex, or dies. Based upon the facts before us, including Wife's desire and ability to be rehabilitated, we find that the indefinite award of possession of the marital residence to Wife with Husband having the substantial financial obligations for the mortgage is not supported by the evidence. This finding is based in part on the fact that Wife is relatively young and in good health and is pursuing an education and a new career. Moreover, there is a preference for rehabilitative alimony over alimony *in futuro*.

It is also important to note that the trial court awarded Wife both rehabilitative alimony and alimony *in futuro*. Our supreme court has held "that a concurrent award of both types of alimony is inconsistent," *Crabtree v. Crabtree*, 16 S.W.3d 356, 358-9 (Tenn. 2000), and that "alimony *in futuro* and rehabilitative alimony are mutually exclusive." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). When the court addressed whether a trial court may order successive awards of rehabilitative alimony and alimony *in futuro,* it stated "that the legislature has demonstrated a preference for an award of rehabilitative alimony and held that alimony in futuro should be awarded

---

[4]The version of Tenn. Code Ann § 36-5-101(d)(1) applied and cited above has since been amended.

only when rehabilitation is not feasible." *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002) (citing *Crabtree*, 16 S.W.3d at 358-9).[5]

Accordingly, we modify the award to Wife of possession of the home, along with Husband's corresponding financial obligations for the mortgage, by reconstituting it as rehabilitative alimony and limiting the award to the same three year period as the $100 per week rehabilitative alimony.

### Valuation and Division of Marital Assets

Husband asserts that the division of marital property was inequitable in that he was assigned the majority of marital debts while Wife was given the majority of marital assets.[6]  Husband contends that the trial court erred by dividing the marital assets without assigning values to all of the marital assets.

Tenn. Code Ann. § 36-4-121 governs the division and distribution of marital property.  When making an equitable division of marital property, the court is to consider various factors including, but not limited to, the length of the marriage; the parties' age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs; the relative ability for future acquisitions of capital assets and income; the contribution of each party to the acquisition and dissipation of marital assets; the economic circumstances of the parties at the time the property division is to become effective; and other factors necessary to weigh the equities between the parties.  Tenn. Code Ann. § 36-4-121(c).

The trial court acknowledged that the parties had a lengthy marriage and expressed its intent to divide the assets equally.  Specifically, the trial court stated, "This long-term marriage of some 21 years at separation carries the presumption of equal division."

The marital residence was valued at $50,000, with a mortgage of $19,540. Ownership of the residence was divided equally though Wife was afforded sole possession as alimony *in futuro*.

---

[5]Tenn. Code Ann. § 36-5-101(d)(1) was amended effective August 8, 2003 relative to "permitting discretion in determining appropriate alimony" and adding "transitional alimony" as a type to be considered.  The amendment authorizes awarding periodic alimony in addition to a rehabilitation award, where a spouse may be partially rehabilitated, or instead of a rehabilitation award, where rehabilitation is not feasible. Tenn. Code Ann. § 36-5-101(d)(1)(C). We find the amendment is not applicable to the facts of this case for Wife's rehabilitative alimony was not partial.

[6]Husband included within this argument his contentions regarding the award of sole possession of the marital residence and his corresponding obligations for the mortgage and insurance.  We elected to deal with the marital residence and related financial obligations in the preceding paragraph.

Husband's 401(k) was valued at $4,818.81 and it was awarded to Husband.[7] The remaining assets and debts were divided as follows:

> Each of the parties will keep all personal property currently in his/her possession, except that Husband will recover the following: all pocket knives, all keys to his truck, toolbox, computer chair, camping equipment, including the tent, cook stove and lantern, all of his pictures and a duplicate or negatives of the children's pictures. Husband will have his 401(k) and pension.

> Wife will pay and hold Husband harmless on the following marital debts:
> NBC loan – $1500.00
> Sam's – $1200.00
> Household Credit – $4000.00
> USA First VISA – $4584.36
> Capital One MasterCard – $650.00
> Providian VISA – $970.00
> Crocket Hospital – $1329.76
> Lawrenceburg Ambulance – $84.75
> Wife will be responsible for any indebtedness owed to her mother.

Though the order did not identify the amount of the indebtedness, the record suggests that the indebtedness owed by Wife to the mother was $11,500.

Husband complains that the distribution of the assets and debts was improper; however, the bulk of this complaint pertained to the award of sole possession of the residence to Wife (though Husband's calculations erroneously suggest this to be the equivalent to an award of sole ownership, in fee) and Husband being held liable for the financial obligations pertaining to the residence. We addressed these two significant factors above, the result of which is a substantial economic benefit to Husband. We find little if any other evidence to support Husband's complaints of alleged financial disparity in the division of marital assets. Moreover, we note that Wife, not Husband, was held solely liable for certain credit card debts and the financial obligations to her mother in excess of $25,000. An equitable division of marital assets is not necessarily an equal one. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Moreover, a division is not rendered inequitable simply because it is not precisely equal. *Cohen v Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996).

---

[7] Regarding this 401(k), the trial court held, "Husband suspended contributions to his 401(k) on January 1, 1994. The account balance is $4,818.81 as of December 31, 2002, with an outstanding loan balance of $2,321.56. This loan was applied for on February 1, 2002, . . . and the funds distributed on March 1, 2002. The original Complaint for Divorce was filed by Wife on February 12, 2002, and Husband was served February 13, 2002. Wife claims that Husband is in violation of the Temporary Mutual Injunction under Tenn. Code Ann. § 36-4-106. The Court finds that he is technically in violation of the automatic injunction, and will not offset the balance of the outstanding loan against this asset in distributing marital property."

Husband further argues that the trial court's distribution of assets was inequitable due to the court's failure to designate a value for every marital asset. His complaint principally pertains to six assets.[8] Two of the items are motor vehicles, one of which was awarded to each party. Husband's valuation of the two vehicles was within $500 of the other. Wife's valuation suggested that Husband's vehicle had a value of $3,500 greater than the vehicle awarded to her. Based upon the evidence presented by the parties, the four remaining assets have a maximum value of $7,400 and a minimum of $1,100. While the trial court should value marital assets – assuming the asset(s) have a value worthy of valuation which is often dependent on the size of the marital estate-- in order to make an equitable distribution, we find this a proper circumstance for the application of the maxim *de minimis non curat lex* (the law does not concern itself with trifles).

Trial courts are afforded wide discretion when dividing the interests of parties in jointly owned property. *Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1996). The trial court's distribution will be given great weight on appeal, and will be presumed to be correct unless we find the preponderance of the evidence is otherwise. *Barnhill v. Barnhill,* 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). We are not inclined to disturb a trial court's division of marital property unless we find that the distribution lacked proper evidentiary support or was due to either an error of law or a misapplication of the statutory requirements. *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn. Ct. App.1990). Finding that the trial court's distribution of assets and liabilities is supported by the evidence and that the trial court properly applied the statutory requirements, we affirm the trial court on this issue.

<u>Attorney Fees</u>

Husband's final issue on appeal concerns the trial court's award of $1,500 in attorney fees to Wife. An award of attorney's fees in divorce cases is generally considered to be a form of spousal support. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Consequently, an award of attorney fees is subject to the same consideration and as any other form of alimony. *Id.* at 783. Thus, Tenn. Code. Ann. § 36-5-101(d) is applicable here. Wife, a full-time student, had no income at the time of trial and her unemployment benefits were scheduled to end two weeks after the trial. The record supports the trial court's finding that "Wife does not have sufficient cash or other assets easily convertible to cash to pay her attorney's fees and expense of litigation." An award of attorney fees is within the sound discretion of the trial court, and will not be reversed on appeal unless there is an abuse of that discretion. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Thus, we find that Wife demonstrated that she is economically disadvantaged and therefore affirm the trial court's award of attorney fees.

---

[8]Husband also complained that the court did not place a value on three knives. We view this complaint as meritless and disingenuous for Husband failed to present any evidence of the value of the knives and the court awarded the knives to Husband. The parties are responsible for proposing values to marital property, not the court. *Wallace v. Wallace* 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987).

The trial court's decision is modified in part, affirmed in part and remanded. On remand, the trial court shall determine, absent an agreement between the parties, how the marital residence shall be sold at the end of three years. The sale proceeds shall be divided as provided by the trial court's Findings of Fact and Conclusions of Law. Costs are taxed to Husband, Randy Cox.

_____
FRANK G. CLEMENT, JR., JUDGE